IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY ASHFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 06 C 798 |
| | ) |
| LUIS RIVERA, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Gregory Ashford has sued a number of correctional officers employed by the Illinois Department of Corrections, alleging that they used unnecessary force against him, denied him medical treatment, and/or failed to intervene to stop other officers from using unnecessary force against him, in violation of his First, Eighth, and Fourteenth Amendment rights. The defendants have moved for summary judgment, arguing that Ashford failed to exhaust internal prison grievance procedures, as required by the Prison Litigation Reform Act. For the reasons stated below, the Court denies defendants' motion.

### Facts

Ashford alleges that on July 26, 2005, he was confined at Stateville Correctional Center. While waiting to be taken to court, he says, he was having a conversation with another inmate regarding a legal issue when Luis Rivera, a correctional officer, told Ashford to "shut the f--- up." Ashford says he told Rivera that he was not talking loud or bothering anyone and that he told Rivera, "you talk to your f---ing kids that way and I am not your kid." Ashford says this

angered Rivera, who became aggressively hostile toward Ashford, pointing his fingers in Ashford's face and making threats to injure him. Rivera then allegedly told Ashford to "cuff-up"; Ashford says he obeyed. Ashford claims that Rivera violently tightened the handcuffs, resulting in swelling, numbness, and bruises.

Ashford claims that other correctional officers – J. Curry, R. Brown, J. Rinke, and Sgt. Selmon – arrived and asked what was going on. According to Ashford, Rivera maliciously and unnecessarily "body slammed" Ashford against a wall, resulting in severe lower and upper back pain from which he says he still suffers today. Ashford also contends that while he was on the ground, Selmon and Rivera repeatedly kicked him, and Selmon sprayed mace in Ashford's face, blinding him for approximately six and a half hours. Ashford alleges that Curry, Brown, and Rinke witnessed the abuse but failed to intervene.

Ashford contends that while Selmon was spraying him with mace, Lt. Burgess arrived and asked what was occurring. Ashford claims that he tried to explain but was unable to do so because Rivera hit him in the face and told him, "take that you loud mouth b----." Ashford says that he was then hit a third time and that he heard Sgt. Selmon say, "you're going to learn to do what you are told, punk."

Ashford alleges that even though he repeatedly requested medical treatment from Burgess, Selmon, Rivera, Curry, Brown, and Rinke, he was denied treatment and was taken to a segregation unit. Ashford says that he also asked Lt. Franklin, an officer in the segregation unit, for medical assistance. Ashford claims that Franklin denied him treatment and told him to "shut the f--- up," saying that Ashford "got what he deserve[d] for talking [too] much." According to Ashford, on various dates in mid-October 2005, he asked defendants Foxon, Kiefling, Taylor, Russell, Sandman, Polk, and Borkowski (all of whom were "correctional

medical technicians") for treatment but that each refused and made disparaging remarks to him.

The defendants have moved for summary judgment, arguing that Ashford failed to exhaust available administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a).

**Discussion**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any genuine material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, a court view the record and inferences drawn from it in the light most favorable to the party opposing the motion. *E.g., Lohorn v. Michael*, 913 F.2d 327, 331 (7th Cir. 1990). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Id.*

Under the PLRA, "no action shall be brought with respect to prison conditions... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This means a prisoner "'must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

Illinois' prison grievance procedures require an inmate who is unable to resolve a complaint or problem to file a written grievance on a prescribed form within sixty days of the incident. 20 Ill. Adm. Code § 504.810. A late-filed grievance may be considered if the inmate can show good cause for the delay. *Id.* The completed grievance form is to be placed in the mailbox provided in each living unit. *Id.* If a grievance is not resolved to the inmate's

satisfaction on initial review, the inmate may appeal in writing to the director of the Department of Corrections. The director may refer the grievance to the Administrative Review Board if a hearing is warranted. *Id.* § 504.850.

Defendants' first contention is that Ashford did not properly exhaust administrative remedies because he failed to file timely grievances concerning the matters underlying his claims. Defendants have submitted an affidavit from Jerry Baldwin, a correctional counselor who says he was assigned to Ashford. Baldwin states that he met with Ashford on August 11 and September 8, 2005 but that Ashford voiced no concerns. Baldwin Aff. ¶ 5. Baldwin says that on October 7, 2005, Ashford indicated that he would be sending Baldwin two grievances, and that on October 17, 2005, he received a grievance (dated October 13) in which Ashford claimed that correctional medical technician Foxon had denied him medical treatment on October 13. *Id.* ¶¶ 6-7 & attachment. Baldwin says that this grievance was returned to Ashford with a response on November 18, 2005. *Id.*

Baldwin also states that he met with Ashford on November 7, 2005 and that Ashford said he had no other concerns. *Id.* ¶ 9. Baldwin says, however, that later that same day he received grievances from Ashford dated August 2, 2005, October 11, 2005, October 12, 2005, October 13, 2005, October 14, 2005, as well as three grievances dated October 17, 2005. *Id.* ¶ 10. The grievances alleged excessive use of force and denial of medical treatment by the staff. *Id.* Baldwin says that these grievances were returned to Ashford on November 18, 2005. *Id.* Defendants did not include copies of these grievances or the responses to them with their motion. (Ashford provided the Court with a copy of the grievance dated August 2, 2005; the response section states that the grievance was rejected because it was not timely filed. *See* Pl. Resp., Ex. C.)

Baldwin claims that on November 28, 2005, he received a grievance dated November 22, 2005 regarding the July 26, 2005 incident. *Id.* ¶ 11. Baldwin claims that this grievance was returned to Ashford because it was not submitted in the appropriate time frame. *Id.*

Baldwin also claims that on December 1, 2005 he received several grievances dated November 21, 2005 and November 22, 2005, which he forwarded to the prison health care unit on December 14, 2005. *Id.* ¶ 12. These grievances, along with the responses from the medical director, were allegedly returned to Ashford on December 14, 2005 and February 8, 2006. *Id.*

If Baldwin's affidavit were the only evidence the Court had, it might be sufficient to establish that Ashford failed to file a timely grievance regarding the events of July 26, 2005. But Ashford asserts that he submitted a grievance regarding those events in timely fashion. Specifically, Ashford states that he submitted the grievance dated August 2, 2005 to Baldwin sometime between August 14 and August 16, 2005. *See* Pl. Resp. (dated July 3, 2006) at 9; Pl. Reply (dated Sept. 1, 2006) at 4. Ashford says he submitted the grievance while he was housed in the segregation unit, where envelopes are not provided and prisoners are required to slide grievance forms under the cell door to be picked up by a guard, which is what Ashford says he did. *See* Pl. Resp. at 13. If what he says is true – and the Court cannot say it is untrue on the present record – then Ashford likely did what he was required to do to submit the grievance for decision in timely fashion.

According to Ashford, Baldwin simply held the grievance and then returned it to Ashford on November 18 with a statement that it had not been timely filed – a statement that Ashford says was false. *See* Pl. Reply at 4. Ashford certainly has no personal knowledge of this, but it is fairly obvious that if Ashford submitted the grievance as he describes in mid-August but did not receive it back until November 18, then *someone* in the prison system delayed its processing.

Baldwin denies that he sat on Ashford's August 2 grievance, but the real question is whether Ashford submitted the grievance as he contends. If so, then the Court will be required to reject defendants' argument that the grievance was not submitted in timely fashion. The PLRA's exhaustion requirement is not read "'so narrowly as to ... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (quoting *Goodman v. Carter*, No. 00 C 948, 2001 WL 755137, *3 (N.D. Ill. July 2, 2001)). In any event, given the circumstances, the veracity of Baldwin's denial cannot be determined on a motion for summary judgment.

In sum, genuine issues of fact exist regarding whether Ashford timely submitted a grievance regarding the July 26, 2005 events, making summary judgment on that point inappropriate.

With regard to the alleged denials of medical treatment in mid-October 2005, it is less than clear that Ashford filed grievances describing each and every particular of what he now claims. But from the exhibits that Ashford attached to his response to defendants' motion, it appears that he submitted grievances dated October 11, 12, 13, 14, and 17, 2005 asserting denial of medical treatment and that these were returned to him, with responses, on November 18, 2005. Pl. Resp., Exs. J, K, L. M & N. Each of these grievances appears on its face to have been submitted within the time frame established by the Illinois Administrative Code. Indeed, defendants appear to concede that these grievances were timely filed. *See* Def. LR 56.1 Statement ¶¶ 6, 8.

Defendants also seem to contend, though only in rather cursory fashion, that Ashford failed to appeal the denial of his grievances. *See* Def. Mot. for Summ. Judg. at 7. This argument was not sufficiently developed in defendants' opening memorandum to put Ashford on notice

that it was being offered as a basis for summary judgment. Nonetheless, with his response Ashford provided letters he says he sent to the Administrative Review Board on December 2 and December 10, 2005 asking for consideration of his August 2 grievance. *See* Pl. Resp., Exs. B & D. Defendants state in their reply, in conclusory fashion without support, that this was "outside of the established grievance procedure." *See* Def. Reply ¶ 5. That argument, however, has been insufficiently developed to provide a basis for summary judgment.[1]

It is unclear from Ashford's response that he did anything to attempt to appeal his mid-October grievances regarding denial of medical care. But because defendants did not clearly argue failure to appeal in their motion as a basis for summary judgment, the Court will not address the issue at this juncture.

## Conclusion

For the reasons stated above, the Court denies the defendants' motion for summary judgment. It appears that an evidentiary hearing will be required to determine the exhaustion-of-remedies issue. The Court proposes to conduct that hearing before proceeding with the remainder of the case. Plaintiff and counsel for defendants are each directed to submit separate status reports on or before December 8, 2006, setting out what each side believes are the proper procedures for conducting such a hearing. The case is set for a status hearing in open court on December 14, 2006 at 9:30 a.m. The Court will schedule the anticipated hearing at that time and will discuss with defendants' counsel the necessary steps to ensure that plaintiff is present at the

---

[1] In the future, defense counsel would be well advised to give plaintiff's contentions something other than the back of their hand if they genuinely wish to have a serious shot at summary judgment. The Court also notes that defendants' suggestion that the fact that some of Ashford's claims are barred because his grievances were "addressed by staff," *see* Def. Mot. for Summ. Judg. at 7; Def. Reply ¶ 8, is entirely unsupported and, on the surface at least, appears to the Court to be a legally frivolous contention that administrative exhaustion is the *end point* for a prisoner suit, rather than a *prerequisite* to suit. By its plain language, § 1997e(a) permits a prisoner to file suit once he exhausts administrative remedies; it does not say that he is stuck with the result obtained in the administrative review process.

hearing.

                                                 _____
                                                 MATTHEW F. KENNELLY
                                                 United States District Judge

Date:   November 21, 2006